IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BRIDGET K.[1],

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of
Social Security,**

      **Defendant.**

Case No. 22-cv-00159-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Income Security (SSI) benefits pursuant to 42 U.S.C. § 423 and 42 U.S.C. §§ 1382 and 1382c, respectively[2].

### PROCEDURAL HISTORY

On May 9, 2019, plaintiff applied for DIB, alleging a disability onset date of November 15, 2018. (Tr. 329). On June 8, 2019, she applied for SSI, initially alleging a

---

[1] In keeping with the court's practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.,* and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.,* and 20 C.F.R. pt 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

disability onset date of January 10, 2010 (Tr. 337), which was amended before the hearing to reflect a disability onset date of May 3, 2019. (Tr. 370). At the time of the amendment, plaintiff effectively withdrew her claim for DIB. (Tr. 370). On December 10, 2019, plaintiff was advised that she did not qualify for benefits on her SSI claim. (Tr. 211). On December 12, 2019, plaintiff requested reconsideration. (Tr. 216). On February 20, 2020, plaintiff was advised that her claim had been independently reviewed; however, the previous denial was found proper under the law. (Tr. 224). On March 4, 2020, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") because she disagreed with the determination and claimed to remain totally disabled. (Tr. 230). After holding an evidentiary hearing, the ALJ denied the application on October 7, 2021. (Tr. 28-42). The Appeals Council denied plaintiff's request for review on November 29, 2021, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1-9). Plaintiff has exhausted administrative remedies and filed a timely complaint with this Court (Doc. 1).

## ISSUES RAISED BY PLAINTIFF

In her brief, plaintiff generally claims her issues are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact of the ALJ are supported by the record as a whole (Doc. 24). Specifically, plaintiff asserts the following arguments:

1. The decision fails to properly evaluate medical opinion evidence.
2. The RFC is not supported by substantial evidence and lacks an explanation how the evidence supports the RFC.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Moreover, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ, Kellie Wingate Campbell, followed the five-step analytical framework described above. (Tr. 28-42). She determined that plaintiff has not engaged in substantial gainful activity since the amended alleged onset date of May 3, 2019, and that she meets the insured status requirements through December 31, 2014. Plaintiff was born on April 17, 1965 and was 54 years old, which was defined as a younger individual age 18-49 on the alleged date of onset, but which was subsequently changed to closely approaching advanced age.

The ALJ found that plaintiff had the following severe impairments that

significantly limit her ability to perform basic work activities: vision impairment, hearing impairment, chronic fatigue syndrome, and affective disorder. The ALJ further found that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

The ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 CFR 416.967(c),

> "[e]xcept she can never climb ladders, ropes and scaffolds or be exposed to unprotected heights or hazardous work environments; the claimant can occasionally climb stairs or ramp; she can perform tasks that require occasional near acuity, far acuity, depth perception and accommodation; the claimant should avoid tasks that require reading fine print; she can remember and carry out simple, routine tasks and make simple work-related decisions; the claimant cannot perform production pace tasks that require strict hourly goals; she can have frequent contact with supervisors and occasional contact with co-workers and the general public; and the claimant should avoid noise above a moderate level as defined by Appendix D of the Selected Characteristics of Occupations." (Tr. 36).

The ALJ found that Plaintiff was unable to perform any past relevant work and that she has at least a high school education. The ALJ found that transferability of job skills is not material to the determination of disability because the claimant's past relevant work is unskilled. The ALJ also found that, considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.

Finally, the ALJ found that the plaintiff has not been under a disability, as described in the Social Security Act, from May 3, 2019, through the date of this decision.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following is directed to the points raised by plaintiff in this matter, not her previous application.

1. **Agency Forms**

Plaintiff's date of birth is April 17, 1965. (Tr. 329, 336). In June 2019, she filed a Disability Report stating that the following conditions limited her ability to work as of July 16, 2009: blind or low vision, depression, anxiety, chronic fatigue syndrome, hypertension, hearing impairment, and pre-diabetes. (Tr. 375-382). On September 28, 2021, plaintiff amended the alleged onset date of disability to May 3, 2019. (Tr. 370). A disability report was also compiled by the SSA field office on that same date identifying May 3, 2019 as the potential onset date. (Tr. 371-374).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on September 28, 2021[3]. (Tr. 49-78). At the outset of the hearing, plaintiff's counsel waived formal reading of the issues. (Tr. 53). Plaintiff testified regarding her symptoms, medical treatment, and daily activities. (Tr.49-49). Plaintiff last worked in 2010 at Purchasing Services assembling electronic components, packing boxes, running hardware, and loading boxes onto pallets. (Tr. 56). The company ran out of work, so she took unemployment, then disability. (Tr. 55). She hasn't looked for work since then because she "don't feel like

---

[3] Plaintiff is represented by the same attorney in this Court.

working" and didn't think she'd be able to. (Tr. 57). Although plaintiff indicated she lifted "heavy boxes", the VE and ALJ determined that the heaviest box was approximately 20 pounds, which is characterized as light (*Id.*).

Plaintiff's counsel questioned plaintiff about her sleep habits and typical daily activities. (Tr. 61-64). Plaintiff indicated that she had trouble staying awake and staying focused and needed to frequently change what she was doing. (Tr. 67-68). Even after sleeping at night, she doesn't feel rested and said it takes her a little while to get motivated. (Tr. 62).

The ALJ followed up on some of plaintiff's complaints, including hearing and vision. Plaintiff was able to hear and conduct the hearing telephonically and indicated that she does okay on the phone most of the time. (Tr. 69). As for her vision, plaintiff can see her computer as long as she has "good glasses", and she is able to text and see her phone at the normal font. (*Id.*).

Vocational expert ("VE") Vanessa May testified at the hearing. (Tr. 70-77). The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. (Tr. 58). The VE identified three jobs that could be done by a person with plaintiff's RFC; including, janitor (DOT 381.687-018); kitchen helper (DOT 318.687-010); and, bagger (DOT 920.687-014), all of which were medium occupations, unskilled with an SVP of 2. (Tr. 58). The VE also testified to the number of each of those jobs in the national economy. (*Id.*).

Plaintiff's counsel followed up and inquired about the amount of time a worker could be off task daily, and the VE indicated that productivity declines if someone is off-

task 15% of the time. (Tr. 73). The VE cited jobs that were pretty isolative and would not require dealing with the public. (Tr. 74). She also cited jobs that were task-oriented, not production-paced or assembly line. (Tr. 74-75).

At the close of the VE's testimony, the ALJ asked whether all her testimony had been "consistent with the DOT." She replied that it had been. (Tr. 77). The ALJ also inquired whether plaintiff or her attorney had anything else to place on the record, and they both declined. (*Id.*).

### 3. Relevant Medical Records

On June 4, 2019, approximately one month after the amended date of onset, plaintiff saw Brandy Holthaus, NP-C, her primary care provider at Chestnut, for a check-up and advised she had "no other concerns". (Tr. 519-522). Plaintiff reported fatigue, blurry vision, hearing loss, depression, stress, and frequency of urination. On exam, Holthaus observed plaintiff was well-developed and obese. She had normal gait and station and Holthaus noted normal tone and motor strength. Although her affect was flat, she was active, alert, and in a normal mood.

On November 19, 2019, plaintiff underwent a medical examination by ophthalmologist, Dr. Mark Nekola. (Tr. 623-624). Dr. Nekola determined that her best corrected visual acuity on the right is 20/70 and on the left is 20/30. Ultimately, Dr. Nekola found that her current level of "visual functioning is fair" and her "prognosis is also fair". He also indicated she was "legal to drive". Although he diagnosed cataracts, he indicated that as the cataracts worsened, she should be able to have them removed

and the vision should return to its normal state with the left eye being 20/20 and the right eye being mostly likely in the 20/40-20/50 range.

On November 20, 2019, plaintiff followed-up at Chestnut and saw Cheryl Pritchard-Palmer, FNP-BC. (Tr. 635-638). Plaintiff reported difficulty hearing, increased urination, muscle aches/joint pain, no significant weight or vision change. Plaintiff also reported sleep issues and depression and rated her life as a 4 out of 10. Pritchard-Palmer questioned if she was taking her meds as prescribed. On physical exam, Pritchard-Palmer noted that plaintiff was clean and active. Her speech was at a normal volume although she claimed she was hard of hearing. She was alert, but irritable and anxious.

On February 5, 2020, plaintiff returned to Pritchard-Palmer with complaints of difficulty hearing, increased urinary frequency, muscle aches/joint pain, and back pain. (Tr. 648-650). Plaintiff again reported depression, restless sleep, and anxiety and rated her life as a 4 out of 10. On exam, Pritchard-Palmer again notes she was clean and active with speech at normal volume. She was alert, but irritable and complaining about not having a diagnosis to support her disability.

On March 9, 2020, plaintiff saw Holthaus with the chief complaint of fatigue that had not improved. (Tr. 745-748). At that time, Holthaus conducted an exam and noted that she was ambulating normally with normal gait and station. She had poor insight but was alert and oriented. She had a flat affect but was oriented and had normal memory. Plaintiff's BP was controlled. As for her chronic fatigue syndrome and lab

results, Holthaus noted that plaintiff was negative for ANA[4] and her Hgb/Hct were normal. She was prediabetic and her Vitamin D level was low, so she was counseled to supplement OTC.

Due to COVID-19, plaintiff had several subsequent encounters via phone with Pritchard-Palmer on May 15, 2020 (Tr. 738-742), August 5, 2020 (Tr. 734-738), October 28, 2020 (Tr. 731-734), and January 22, 2021 as well an additional phone encounter with Holthaus on April 9, 2020 (Tr. 742-744). Pritchard-Palmer focused on the depression while Holthaus focused on the fatigue. At the 1/22/21 visit, Pritchard-Palmer noted abnormal affect, but plaintiff reported her life was a 7 out of 10, which is an improvement from previously reported 4 out of 10.

**4. State Agency Consultants' Opinions**

On two separate occasions, in both 2019 and 2020, two state agency consultants assessed plaintiff's mental and physical RFC based upon a review of the file contents.

In August 2019, Howard Tin, Psy.D., assessed plaintiff's mental RFC. He used electronic versions of the agency forms that are commonly used for this purpose, the Psychiatric Review Technique Form ("PRTF") and the Mental RFC Assessment Form. (Tr. 161-163, 166-167). Dr. Tin determined that claimant was capable of performing one and two-step tasks, and also noted that, "Claimant's allegation of the severity of the disorder is not consistent with claimant's ability to function generally well from day to day." (Tr. 167).

---

[4] ANA is a test used to help diagnose autoimmune disorders.

Page **10** of **19**

In December 2019, Dr. Frank Mikell conducted a physical RFC assessment and determined that, although claimant had occasional limitations, including visual limitations, she was not disabled and her level of visual functioning is fair because the best corrected visual acuity is 20/70 on the left and 20/20 on the right (Tr. 163-169).

In February 2020, Joseph Cools, Ph.D., reassessed plaintiff's mental RFC based upon a review of the record. (Tr. 187-203). He also used the PRT and affirmed the MRFC, indicating that there were no new medical records that supported a worsening of claimant's psych condition. Cools stated, "[t]he claimant can maintain concentration, pace and persistence sufficient to perform simple, routine and repetitive tasks." (Tr. 200). Furthermore, from a psych perspective, "[t]he claimant has a severe mental impairment, but retains the capacity to perform at least simple, routine and repetitive tasks," with limitations. (Tr. 201).

In February 2020, Dr. Douglas Chang also conducted another CE on claimant's physical RFC and determined that claimant's demonstrated RFC was medium. (Tr. 200). Dr. Chang also stated, "based on the evidence in file, we have determined that you can adjust to other work." (Tr. 202).

## ANALYSIS

### I. Medical Opinion Evidence

Plaintiff first argues that that the ALJ failed to properly evaluate medical opinion evidence (Doc. 24, p. 3). The agency revised the regulations regarding consideration of

medical opinions in early 2017.[5]  Because plaintiff's application was filed after March 27, 2017, the revised regulations are applicable. 20 C.F.R. § 404.1520c.

> With respect to consideration of medical opinions, the regulation provides:
>
> "When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §404.1520c(a).

As an initial matter, nurse practitioners are considered acceptable medical sources for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1502(a)(7).

Under the applicable regulation, ALJs evaluate the persuasiveness of each medical opinion based upon: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. §404.1520c(c)(1)–(5). The ALJ must explain only how she considered the first two factors—supportability and consistency—but need not explain her consideration of the other factors. *Id.,* 20 C.F.R. §404.1520c (b)(2).

As set forth *infra*, four state agency consultants performed consultative examinations – two at the initial level (Drs. Tin and Mikell) and two at the reconsideration level (Drs. Cooks and Chang) – on plaintiff. (Tr. 39). In her opinion, the ALJ noted the training and experience of each as a specialist in their respective field

---

[5] 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

before indicating that each of their opinions were consistent with and supported by the medical records and plaintiff's history. (Tr. 39, 40). The ALJ continued to cite to examples, including how the impairments did not significantly limit plaintiff's daily activities and how the alleged disabilities were not fully supported by objective medical records. (Tr. 40). Furthermore, the ALJ's opinion provides confirmation that she reviewed and considered the applicable reports by referencing the detailed narratives contained in each and by indicating that she was deviating slightly by providing plaintiff with MORE, not less restrictions in the RFC determination. (*Id.*).

Plaintiff argues that the ALJ failed to properly explain the required consistency and supportability factors; however, this Court disagrees. Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.,* 20 C.F.R. §404.1520c(c)(1). In other words, supportability addresses the extent to which the medical opinion is explained by the provider and supported by objective findings

Consistency assesses how a medical opinion squares with other evidence in the record. *Id.,* 20 C.F.R. §404.1520c(c)(2). Simply stated, consistency addresses the extent to which a medical opinion is consistent with the record as a whole, including both medical and nonmedical sources.

Although the ALJ only uses the words "supportability" and "consistency" one time in her opinion, it is clear she considered how each of the CE examiner's opinions are both supported by the objective evidence as well as consistent with the record as a whole. The CEs are done via paper review of the record; therefore, the CE physician cannot

Page **13** of **19**

support his opinion with his own findings. Instead, the examiner must rely upon the objective evidence created by treating and/or examining providers. Four separate examiners, two physician and two mental, came to the same conclusion based upon the evidence reviewed. Accordingly, the results were consistent and were supported by the evidence.

## II.  Substantial Evidence

Plaintiff next contends that the RFC is not supported by substantial evidence and notes that the opinion lacks an explanation as to how the evidence supports the RFC (Doc. 24, p. 7).

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). In other words, the RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*. *See Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "The RFC assessment must ... identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "[An] ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

In this case, the ALJ found that plaintiff had the RFC to perform medium work with the caveats that she "can never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments" … "can occasionally climb stairs or ramps" … "can perform tasks that require occasional near acuity, far acuity, depth perception and accommodation" … "should avoid tasks that require reading find print" … "can remember and carry out simple, routine tasks and make simple work-related decisions" … "cannot perform production pace tasks that require strict hourly goals" … "can have frequent contact with supervisors and occasional contact with co-workers and the general public" … "and should avoid noise above a moderate level". (Tr. 36).

> (c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25

>pounds. If someone can do medium work, we determine that he or she can also do sedentary[6] and light work[7]. 20 C.F.R. § 416.967 (c).

The ALJ conducted a review of plaintiff's severe impairments - vision impairment, hearing impairment, chronic fatigue syndrome, and affective disorder – and she recounted her reasoning as to how the medical records and plaintiff's testimony supported her conclusions. The ALJ also considered plaintiff's nonsevere impairments - hypertension, which was medically managed, and obesity, which caused no more than minimal limitations in the ability to "bend, climb and lift." (Tr. 34).

Although determined to be a severe impairment, the treatment records and plaintiff's own records did not support the degree of the vision impairment allegations. The last exam was more than a year prior, so when sent for a consultative examination, it was noted that her best corrected visual acuity was 20/70 in the right eye and 20/30 in the left eye, which is considered fair and well-better than the corrected 20/200 in Listing 2.02. Additionally, the physician noted cataracts, but explained that her vision would improve, not worsen, with surgery. In the RFC, the ALJ appropriately limited

---

[6] (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967 (a).

[7] (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967 (b).

plaintiff from reading fine print and to occasional performance of tasks that required near acuity, far acuity, depth perception and accommodation.

The ALJ also noted that plaintiff was "receiving little, if any, treatment for her hearing impairment", but did not want to discount the allegations. (Tr. 38). Therefore, even though plaintiff testified that she was able to hear during the telephonic hearing, the ALJ considered the prior adjudication and found it appropriate to include the limitation that plaintiff should avoid noise above a moderate level.

As for chronic fatigue syndrome, the ALJ considered that it was identified in the medical records, but few, if any, treatments and/or interventional measures were provided. (Tr. 38). Additionally, the medical records were sparse on this issue and the doctors oft noted normal gait and station as well as muscle tone and strength. Nevertheless, the ALJ reduced the RFC to "less than full range of medium work and included multiple postural, manipulative, and environmental limitations". The ALJ also restricted production based tasks that require strict hourly goals.

The medical records and plaintiff's testimony also contradicted with respect to the severity of plaintiff's mental health impairment. While neither medical listing 12.04 or 12.06 were met, the ALJ noted that plaintiff did have mild and moderate limitations and included those within the RFC. Indeed, the ALJ built an accurate and logical bridge from the evidence to plaintiff's RFC assessment. Plaintiff points to a medical note where she advised NP Pritchard-Palmer on November 16, 2016 that she believed she could not work due to fatigue, but fails to mention that same notation indicates that plaintiff is "[a]fraid to work because it would stop her from getting disability." (Tr. 505).

Page **17** of **19**

Notwithstanding the foregoing, none of plaintiff's providers opined that she was disabled. It is Plaintiff, not the ALJ, who ultimately "bears the burden of proving that she is disabled" by "identifying any objective evidence in the record corroborating" her allegations, *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021), and "show[ing] how her medically determinable impairments caused any limitations beyond those the ALJ found." *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021). "A claimant who does not 'identify medical evidence that would justify further restrictions' is not entitled to remand." *Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020) (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)).

The ALJ bears "the 'final responsibility' for determining a claimant's residual functional capacity." *Fanta v. Saul*, -- F. App'x --, 2021 WL 961647, at *2 (7th Cir. Mar. 15, 2021) (quoting 20 C.F.R. § 404.1527(d)(2)). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Paul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Additionally, the ALJ is not required to investigate further and/or obtain medical opinions from plaintiff's medical providers. *See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018).

As set forth infra, the ALJ did just that. In a comprehensive discussion of plaintiff's testimony and medical records, the ALJ addressed the reported impairments and listed

her reasoning for why the objective medical evidence supported her conclusions, which clearly surpasses the need to 'minimally articulate' her reasoning. The record supports this conclusion; therefore, this Court finds the ALJ properly determined that plaintiff has the RFC for medium work with certain limitations.

## CONCLUSION

After careful review of the record as a whole, the Court concludes that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Commissioner.

**IT IS SO ORDERED.**

**DATED: January 31, 2023**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**